UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Susan Piela,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 1:25-cv-01280-KES-GSA

**FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO DENY DEFENDANT'S CROSS MOTION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**

**(ECF Nos. 9, 11)**

## I. Introduction

Plaintiff Susan Piela seeks judicial review of a final decision of Defendant Commissioner of Social Security denying her applications for social security disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs. After reviewing the record, the undersigned finds that substantial evidence and applicable law do not support the ALJ's decision and recommends that the Court direct entry of judgment in favor of Plaintiff and against Defendant, reversing the final decision of the Commissioner of Social Security.

## II. Factual and Procedural Background

On July 22, 2022 and July 29, 2022, the claimant filed applications for disability insurance benefits and for supplemental security income, alleging disability beginning December 8, 2021 AR 15. The claims were denied initially on October 21, 2022, and upon reconsideration on February 24, 2023. AR 15. On April 16, 2024, the ALJ held a hearing. AR 28–66. On July 5, 2024, the ALJ issued an unfavorable decision. AR 12–27. The Appeals Council denied review on July 31, 2025. AR 1–6. Plaintiff then filed the instant complaint in this Court.

**III. Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

**IV. Evaluating a Claimant's Alleged Disability**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

Finally, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099 (citation omitted).

## V. The ALJ's Decision

At step one, the ALJ found that the claimant had not engaged in substantial gainful activity since December 8, 2021, the alleged onset date. AR 17.

At step two, the ALJ found that Plaintiff had the following severe impairments: "a history of left ankle fracture status post open reduction internal fixation (ORIF); and carpal tunnel syndrome." AR 18.

At step three, the ALJ found that "The claimant does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).” AR 18.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded, “that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can perform postural activities occasionally.” AR 18–22.

At step four, the ALJ found that the claimant could perform her past relevant work as a server. AR 22.

Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since the alleged onset date of December 8, 2021. AR 22.

## VI. Issues Presented

Plaintiff asserts three claims of error: **1**- “Remand is required because the ALJ failed to consider or develop the mental impairments of record.” MSJ at 2. **2**- “The ALJ failed to include any functional restrictions in his residual functional capacity (RFC) finding to account for Plaintiff's admittedly severe [carpal tunnel syndrome] CTS.” MSJ at 2. **3**- “Remand is required because the ALJ ignored or failed to evaluate critical evidence, or otherwise cherrypicked the record regarding evidence of Plaintiff's cane.” MSJ at 2.

### A. Evaluating Mental Impairments (Claim 1)

#### 1. Applicable Law

"In evaluating mental impairments, an ALJ must rate a claimant's degree of limitation in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." Spears v. Saul, 842 F. App'x 107, 108 (9th Cir. 2021) (citing 20 C.F.R. § 404.1520a(c)(3)). "These factors are generally analyzed in a Psychiatric Review Technique Form (PRTF) ... at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered

at subsequent steps unless the mental impairment is found to be not severe at Step Two." Restifo v. Astrue, No. ED CV 10-01469, 2011 U.S. Dist. LEXIS 64552, 2011 WL 2415775, at *1 (C.D. Cal. June 15, 2011) (citing SSR 85-16, 1985 SSR LEXIS 18, 1985 WL 56855). Thus, in determining a claimant's mental RFC, the ALJ must fully consider "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." 20 C.F.R. §§ 404.1545(c), 416.945(c).

The ALJ first evaluates "pertinent symptoms, signs, and laboratory findings to determine whether" the claimant has "a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). If so, the ALJ then "rate[s] the degree of functional limitation resulting" from the impairment. Id. § 404.1520a(b)(2). The ALJ considers four broad functional areas: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." Id. § 404.1520a(c)(3).

In addition, the Social Security Administration supplemented the five-step general disability evaluation process with regulations governing the evaluation of mental impairments at steps two and three of the five-step evaluation process. See generally 20 C.F.R. § 404.1520a. First, the ALJ must determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Next, the Commissioner must assess the degree of functional limitations resulting from the claimant's mental impairment with respect to the following functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). These four areas are known as the "Paragraph B" criteria. Id.

In the end, the Commissioner must determine the severity of the claimant's mental impairment and whether that severity meets or equals the severity of a mental impairment listed

in Appendix 1. 20 C.F.R. § 404.1520a(d). Under Appendix 1, to satisfy to the Paragraph B criteria, a claimant's mental impairment renders them disabled if it "result[s] in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b). A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively on a sustained basis. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(d). By contrast, an "extreme" limitation is the inability to function independently, appropriately, or effectively on a sustained basis. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(e).

If the Commissioner determines that the severity of the claimant's mental impairment meets or equals the severity of a listed mental impairment, the claimant is disabled. See 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, the evaluation proceeds to step four of the general disability inquiry. See 20 C.F.R. § 404.1520a(d)(3).

**2. Analysis**

The ALJ is required to consider "only impairment(s) you say you have or about which [they] receive evidence." 20 C.F.R. § 404.1512(a).

Here, the ALJ did not consider anxiety and depression as mental impairments, severe or otherwise, and they were not mentioned in the ALJ's decision. See AR 18 (discussing severe impairments of ankle fracture and carpal tunnel syndrome, and non-severe impairments of hypertension and high blood pressure).

When evaluating alleged mental health conditions, as set forth above, the ALJ first determines whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1); second, the ALJ uses the psychiatric review technique (PRT) at step two to assess the degree of functional limitations in the areas of (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining

pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(b)(2), (c)(3); and third, the ALJ determines whether that severity meets or equals the severity of a mental impairment listed in Appendix 1. 20 C.F.R. § 404.1520a(d).

Plaintiff emphasizes various evidence of her anxiety and depression:

> Ms. Piela specifically alleged disability due to anxiety and depression (Tr. 280). Despite specifically alleging disability due to mental impairments, the ALJ completely failed to evaluate Ms. Piela's mental impairments as required by the regulations. Ms. Piela's allegations of mental health impairments were well-documented. Even state agency reviewing sources acknowledged that "[treating source] records indicate an anxiety medication" (Tr. 76); "records note Rx Lorazepam by [treating physician]" (Tr. 91). There is also extensive documentation of Ms. Piela's abnormal mood and affect throughout the record (e.g., "Mood is anxious" (Tr. 436); "Affect is labile" (Tr. 471); "Affect is labile" (Tr. 628); "Mood is anxious" (Tr. 636); "Recommended that patient make a follow up appointment to address depression/mood disorder" (Tr. 651, 666).

MSJ at 2–3, ECF No. 9.

Regulations applicable to medically determinable impairments (MDIs) are as follows:

> If you are not doing substantial gainful activity, we will then determine whether you have a medically determinable physical or mental impairment(s) (see § 404.1520(a)(4)(ii)). Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s). After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.

20 CFR § 404.1521

Here, the parties disagree as to whether the ALJ erred in declining to apply the PRT. The controlling case on this point is Keyser, which holds that the ALJ must apply the PRT when the claimant has raised a "colorable claim of mental impairment." Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725-727 (9th Cir. 2011). The Court in Keyser held that the claimant in that case raised a "colorable claim" based on the following facts:

> Keyser's treating doctors diagnosed her with bipolar disorder, and paranoid and

> schizotypal personality traits. Dr. Monteverdi completed a medical source statement indicating that she had moderate limitations in several areas including the ability to understand and remember detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to interact appropriately with the general public or customers, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to maintain socially acceptable behavior, and the ability to respond to unexpected changes in the work place. She also received a Global Assessment of Functioning of 55 to 65, which indicates mild to moderate symptoms. Furthermore, Keyser's husband submitted a written statement and testified as to his wife's mental impairments and their impact on her ability to maintain employment.
>
> Keyser, 648 F.3d at 726–27.

In an attempt to distinguish Keyser, Defendant argues:

> The instant case is distinguishable from Keyser and its progeny. The record contains no diagnosis of a mental impairment from an acceptable medical source, nor does it contain the supporting evidence contained in Keyser and its progeny. The record contained numerous normal mental status examinations (AR 439 [6/2/22], 445 [2/9/22], 632 [6/2/22], 649 [9/9/22], 807 [2/21/24]). Self-assessment depression screens were negative for significant symptoms (AR 429 [6/30/22], 433 [6/29/22], 435 [ 6/14/22], 448 [2/9/22]). On September 9, 2022, Plaintiff refused to answer depression screening questions, and was advised to follow up to address depression (AR 651, 666). This evidence did not raise a colorable claim. Hayes v. Berryhill, 721 F. App'x 648, 652 (9th Cir. 2018) (mental impairment claim not colorable and ALJ not required to order a mental consultative examination because the record contained no mental treatment and no opinion that claimant had mental limitations); Wills v. Colvin, No. 3:12-CV-01227-BR, 2013 WL 6632922, at *4 (D. Or. Dec. 17, 2013) (despite the presence of a diagnosis, claimant failed to raise a colorable claim because there was no evidence of significant mental limitations) (remanded on other grounds). While it is true that Plaintiff appeared anxious on a few occasions (AR 436 [6/14/22], 636 [6/14/22]), sporadic observations of an anxious demeanor do not constitute a colorable claim of mental impairment. Spence v. Colvin, 617 F. App'x 752, 754 (9th Cir. 2015) (observations by medical providers suggesting the claimant "talked incessantly and had trouble staying on track" did not raise colorable claim without objective evidence); Arispe v. Colvin, No. C13-5425-JCC, 2014 WL 619718, at *6 (W.D. Wash. Feb. 18, 2014) (isolated references to depression did not raise a colorable claim) (remanded on other grounds). In July 2022, Plaintiff was prescribed lorazepam for anxiety, but the prescription was never refilled (AR 675, 703, 716). Even if the Court infers from this one-time prescription as that anxiety constituted an MDI in July 2022, that lack of a refill implies that anxiety did not meet the durational requirement. In order to be severe, an MDI must last or be expected to last 12 months, the durational requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

Plaintiff responds to Defendant's argument as follows:

> In Keyser, the Ninth Circuit found a plaintiff had presented a colorable claim of mental impairment where she adduced a treating physician's opinion that included mental limitations, had a diagnosis of bipolar disorder, and a GAF score indicating mild-to-moderate symptoms. Keyser, 648 F.3d at 726. There as here, Ms. Piela has presented a colorable claim; specifically, (1) her specific allegation of disability on the basis of anxiety and depression; (2) the extensive documentation of abnormal mental status examination findings of anxious and labile mood throughout the record; (3) the treating physicians' referral to psychiatric care "to address depression/mood disorder"; (4) the acknowledgment of state agency reviewing consultants that she was prescribed psychiatric medication; (5) Ms. Piela's own sworn testimony and numerous statements throughout the record describing her significant mental health struggles all show at least some degree of mental impairment. Accordingly, remand is warranted for the ALJ to conduct a PRT and include some mental limitation in the RFC. Put another way, the ALJ failed in a very basic way to properly adjudicate this case and his decision thus cannot stand.

Reply at 4–5.

Defendant emphasizes that there is no diagnosis of anxiety or depression, whereas Plaintiff emphasizes two examination findings of anxious mood. AR 436, 636.

Turning first to a discussion of <u>anxiety.</u> Anxious mood does not establish a diagnosis of an anxiety disorder. "To meet the *Diagnostic and Statistical Manual of Mental Disorders*, 5th edition, Text Revision (DSM-5-TR) criteria for generalized anxiety disorder, patients must have excessive anxiety and worry about a number of activities or events (e.g. work and school performance), occurring more days than not for ≥ 6 months."[1]. AR 436, 636.

However, the prescription for Lorazepam, although not a diagnosis, strongly implies the existence of a diagnosed anxiety disorder. AR 675, 703, 716. Defendant contends that, "Even if the Court infers from this one-time prescription as that anxiety constituted an MDI in July 2022, that lack of a refill implies that anxiety did not meet the [12-month] durational requirement." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Notably however, Lorazepam is used for "short-term

[1] https://www.msdmanuals.com/professional/psychiatric-disorders/anxiety-and-trauma-and-stressor-related-disorders/generalized-anxiety-disorder#Symptoms-and-Signs_v1025263

relief of the symptoms of anxiety," not long-term use.[2]

Further, there are two mental status examination findings of "anxious mood" in the record. While these findings are few in number and not equivalent to a diagnosis, they are nevertheless additional objective evidence. Even Defendant acknowledges, following Keyser, that courts have held that a record containing a mental impairment diagnosis from an acceptable medical source, plus additional evidence, raises colorable claims of mental impairment requiring the implementation of the special technique (PRT). See Dykstra v. Barnhart, 94 F. App'x 449, 449 (9th Cir. 2004) (an evaluating psychologist's diagnosis and accompanying objective medical evidence constituted a colorable claim of mental impairment); Jack L. v. Comm'r Soc. Sec. Admin., No. 3:24-CV-01080-AR, 2025 WL 1248920, at *3 (D. Or. Apr. 30, 2025) (evidence of diagnosis of mental impairment from acceptable medical source accompanied by objective medical evidence) (emphasis added); Joanne C. v. Comm'r, Soc. Sec. Admin., No. 3:20- CV-01512-AC, 2022 WL 819812, at *4 (D. Or. Mar. 18, 2022) (diagnoses of mental impairment, hospitalization for suicide attempt, and other evidence raised a colorable claim of mental impairment).

In addition, Defendant's reliance on mostly normal mental status examinations is misplaced at this stage. The proper inquiry at this stage is to determine whether Plaintiff raises a "colorable claim" of mental impairment requiring the ALJ to apply the PRT, and the answer to that question does not depend on whether the findings were mostly normal or mostly abnormal.

In sum, as to the issue of Plaintiff's anxiety, the prescription for Lorazepam is strongly suggestive of an anxiety disorder diagnosis, and findings of anxious mood on mental status exams, although sporadic and few in number, raise a "colorable claim" of the presence of an anxiety disorder. Thus, the ALJ was required to apply the PRT.

---

[2] https://www.mayoclinic.org/drugs-supplements/lorazepam-oral-route/description/drg-20072296

Turning next to a discussion of depression. Plaintiff points to the fact that she identified depression as one of the conditions limiting her ability to work when she submitted her application. AR 280. But this is not tantamount to actual testimony about her depression and its limiting effects as discussed in Keyser, rather it was merely an item on a list of conditions Plaintiff identified in her application. Plaintiff also identifies September 9, 2022 visit notes stating, "Recommended that patient make a follow up appointment to address depression/mood disorder." AR 651. However, this is not an objective finding, and no objective findings were made. In addition, she refused screening for depression and there is no evidence a follow-up ever took place.

In sum, there is no evidence of a diagnosis, other objective findings, or treatment for depression. Further, there was minimal subjective evidence which occurred when she mentioned depression as a condition when applying for disability.

Thus, the undersigned finds that a PRT must be applied to her claim of anxiety, but depression need not be a factor nor considered at subsequent stages of review.

**B. Claims 2 & 3**

**1. RFC, Generally**

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

**2. Subjective Symptoms, Generally**

An ALJ performs a two-step analysis to determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible. See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and the ALJ finds that there is no evidence of malingering in the record, the ALJ must then evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit the individual's ability to perform work-related activities. S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10. Subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record. Nevertheless, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20

C.F.R. § 404.1529(c)(2)).

In addition, other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- treatment other than medications that the claimant receives; 6- any other measures the claimant uses to relieve pain or other symptom; and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

**3. Analysis**

**a. Carpal Tunnel Syndrome**

Plaintiff contends that because the ALJ found her carpal tunnel syndrome (CTS) severe at step two, the RFC must reflect some manipulative limitations. However, caselaw refutes the notion that all severe impairments necessarily must be incorporated into the RFC. As Plaintiff acknowledges, in Bray the Ninth Circuit disagreed that severe impairments necessarily result in RFC restrictions. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228–29 (9th Cir. 2009). Other courts have specifically rejected this notion as to a severe impairment of CTS. See, e.g. Leach v. Comm'r of Soc. Sec., No. 2:18-CV-02001 AC, 2019 WL 4166832, at *7 (E.D. Cal. Sept. 3, 2019) (ALJ not required to include manipulative limitations in the RFC simply because the ALJ determined CTS was severe at step two); Baka v. Berryhill, No. 17-CV-06114-SK, 2018 WL 6267853, at *8 (N.D. Cal. Nov. 8, 2018) (same); Parson v. Colvin, No. ED CV 13-00036-DFM, 2013 WL 6152419, at *4 (C.D. Cal. Nov. 21, 2013) (same).

Although the ALJ was not required to include CTS-related limitations in the RFC merely because it was a severe impairment, the ALJ nevertheless erred in rejecting Plaintiff's subjective testimony about it. By finding that Plaintiff's medically determinable impairments could

reasonably be expected to cause her alleged symptoms, and finding no malingering, the ALJ was required to provide clear and convincing reasons supported by substantial evidence for rejecting her testimony.

Here, the ALJ acknowledged Plaintiff's testimony "That Her fingers lock up and she has carpal tunnel in her wrists. When she was working, she was dropping trays and beverages. Her fingers would lock up when serving people." AR 19. However, the ALJ found this testimony inconsistent with the objective evidence as follows:

> The claimant also has bilateral carpal tunnel syndrome of the upper extremities with neuropathy, and she was recommended to wear carpal tunnel braces. (Exhibit 8F/9, 14). Examination of the forearms and hands showed mild findings. There was mild thenar and hypothenar muscle atrophy. Grip strength was 4/5 in the bilateral hands. (Exhibit 8F/15) (emphasis added).
>
> AR 20.

The ALJ further observed that there were no nerve conduction studies in the record.

As to muscle atrophy, mild atrophy does not necessarily imply mild nerve compression. Rather, mild thenar and hypothenar atrophy suggest chronic or ongoing compression of the median nerve. Specifically, mild muscle atrophy findings do not necessarily prove "mild" severity, it may instead suggest advanced nerve damage.[3] This, in conjunction with reduced grip strength of 4/5, seems to support Plaintiff's testimony. In addition, Plaintiff did not state that she has no ability to use her hands, just that she dropped trays and beverages.

The ALJ also cited Plaintiff's ability to prepare meals, do household chores, shop for food, and drive. However, these activities are more likely to involve one's gross motor muscles as opposed to those needed for repetitive finer manipulation like rolling 400 silverware per day

---

[3] See https://web.stanford.edu/~anagit/CTS/3.4.1.html ("This loss of muscle tone is expressed through weakness of the thumb, frequent dropping of objects and eventual inability to make a fist. With additional nerve damage, the muscle begins to atrophy. In advanced CTS, this atrophy of the thenar muscles can be used for easy visual diagnosis."); https://www.jhandsurg.org/article/S0363-5023(07)00352-8/abstract (explaining that muscle atrophy reflects "advanced nerve damage.").

as she did as a server at Ihop. AR 293. Thus, the ALJ's referenced daily activities do not approximate Plaintiff's past relevant work, nor do they suggest that her alleged manipulative limitations are not credible. Thus, the ALJ's reasoning for discounting Plaintiff's allegations, along with the RFC containing no manipulative limitations, is not supported by clear and convincing reasoning or the substantial evidence standard.

In sum, given that the non-disability determination was predicated on the ALJ's step four finding that Plaintiff could perform her past relevant work as a server, along with the ALJ omitting any manipulative limitations from the RFC, it cannot be said that the error here was inconsequential to the ultimate non-disability determination. See, Treichler, at 1099.

**b. Cane Use**

By way of background, the ALJ explained as follows:

> The claimant's medical records show the claimant sustained an ankle fracture on December 8, 2021, after she got out of her parked car on a hill, and her tire rolled over her left ankle. She had a prior fracture and ORIF surgery to that same ankle when she was 17 years old. She was placed in a cam boot. (Exhibit 5F/7, 3F/6, 1F/52, 6F/13). On December 15, 2021, she underwent ORIF surgery of the left ankle fracture. (Exhibits 1F/36, 5F/7, 6F/23-26). She continued to complain of pain and limited range of motion, but her examinations were mostly unremarkable, and she did not need any further treatment. (Exhibits 1F, 3F, 5F, 6F, 8F). In June 2021, she reported limited range of motion and hesitancy with movement. (Exhibit 6F/35). On August 8, 2022, the claimant continued to report "joint pain and fatigue." (Exhibit 1F/9). She was referred to orthopedics and physical therapy, but the undersigned notes there is no evidence of any orthopedic or physical therapy treatment in the record. (Exhibit 1F/10). In September 2022, the claimant reported jolts of sharp left ankle pain with ambulation and associated swelling. (Exhibit 3F/26). On examination, there was swelling of the left ankle with decreased range of motion, tenderness to palpation around medial and lateral malleolus with well healed scars. (Exhibit 3F/27). She continued to report pain, swelling and numbness in November 2022. The pain was intermittent and sharp, typically associated with ambulating. She was noted to present with a cane for ambulation. (Exhibits 5F/7, 6F/37). On examination, there was mild swelling of the ankle and limited range of motion due to pain. The neurological examination was intact, and xrays of the left ankle and foot showed a well healed fracture. (Exhibits 5F/8, 23). She was recommended weight bearing as tolerated on the left lower extremity, with no mention of assistive devices. (Exhibits 5F/8, 6F/38). AR 24

> Examination of the lower legs revealed venous stasis discoloration changes of the ankles bilaterally with moderate decrease sensation of the lower half o the left lower extremity. (Exhibit 8F/15). Imaging studies showed minimal findings. In March 2024, x-rays of the claimant's left ankle showed mild osteoarthritis of the ankle joint. (Exhibit 8F/18). X-rays of the left tibia-fibula showed mild narrowing of the ankle joint. (Exhibit 8F/20). In April 2024, she complained of shooting pain in the left foot with abnormal separation of her toes. (Exhibit 8F/9). AR 24

The ALJ concluded:

> The claimant's left ankle fracture status post ORIF does not meet or medically equal the criteria of Listing 1.18, because the medical evidence does not establish that she has a documented medical need for a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device involving the use of both hands, nor does the claimant otherwise have an impairment that affects her ability to perform fine and gross movements. AR 22

The VE testified that cane use requirement would eliminate past relevant work as a server. AR 61.

Plaintiff contends that the ALJ erred regarding cane use as follows:

> the ALJ inexplicably made no finding as to whether Ms. Piela's use of a cane was medically necessary . . . It is not sufficient for the ALJ to mention the claimant's use of an assistive device; he must make an explicit finding that the assistive device is not medically necessary and explain the basis for this finding. See Randall W.D. v. Saul, No. 3:19-CV-911, 2020 WL 6939728, at *6 (E.D. Va. Nov. 25, 2020) ("When the record reflects a plaintiff's frequent use of an assistive device, an ALJ's failure to explain the device's omission from the RFC or to provide a narrative discussion on whether the assistive device is medically necessary, leaves a reviewing court to guess about how the ALJ reached her conclusion."); see Heather H. v. Kijakazi, Case No. 4:20-cv-736, 2021 WL 4138406, at *9 (S.D. Tex. Sept. 10, 2021) ("The ALJ may have considered and may have had valid reasons for not including the cane; but as he did not explain them, the Court is unable to determine whether any such rejection is based on substantial evidence.").
>
> MSJ at 7–8.

Defendant responds that "that this is a standard created by Plaintiff not reflected in the regulations or this Circuit's law." Resp. at 8. Defendant is correct that Plaintiff's cited caselaw is not controlling.

From the ALJ's statements, set forth above, it can be inferred that the ALJ found the use of a cane to be not medically necessary. As Defendant explains: "the ALJ did specifically note that Plaintiff's alleged need for a cane was inconsistent with her statement that she did not need a cane in her home, and the fact that the use of a cane was not prescribed, just noted (AR 21)."

Plaintiff counters:

> Here, the ALJ made no explicit finding as to the medical necessity of Ms. Piela's use of an assistive device, and he ignored significant medical evidence supporting this need to use a cane. While the ALJ focused on Ms. Piela having a perceived treatment gap in 2023, the last treatment note from 2022 and the first treatment note from 2024 both show Plaintiff using a cane for ambulation. See Tr. 697, 763 (November 10, 2022: "Patient presents today with cane for ambulation assistance"); Tr. 802 (April 11, 2024: "The patient will be recommended a walker or a walker with wheels. She will continue walking cane."). With regard to the November 2022 treatment note, the ALJ relies on the supposed absence of evidence from the record at times, rather than what the actual evidence says. The ALJ goes so far as to explicitly state in his decision that "She was recommended weight bearing as tolerated on the left lower extremity, **with no mention of assistive devices**. (Exhibits 5F/8, 6F/38)." (Tr. 20) (emphasis added). This statement is outright false, and demonstrates clear cherrypicking of the record. The record clearly and explicitly contradicts the ALJ's misrepresentations. See Tr. 697, 763 (November 10, 2022: "**Patient presents today with cane for ambulation assistance") (emphasis added)** . . . (emphasis added). MSJ at 8 & 9.

Plaintiff continues:

> Moreover, to the extent that the ALJ went to great lengths to "note[ ] the claimant did not seek treatment between November 2022 and February 2024," the ALJ did not appear to take this into consideration in weighing the decision in any way other than construing the evidence as impermissible non-compliance on Ms. Piela's part. While non-compliance may be considered in assessing impairments, the adjudicator must consider "possible reasons [the claimant] may not comply with treatment" and "explain how [he] considered the individual's reasons." SSR 16-3p, 2016 WL 1119029, at *8-9. In particular, an ALJ has a duty to consider the claimant's inability to afford treatment, before drawing any conclusions about alleged gaps in the claimant's treatment history. See Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) ("We agree with every circuit that has considered the issue that poverty excuses noncompliance."); see also Taylor v. Bowen, 782 F.2d 1294 (5th Cir. 1986); see also SSR 16-3p, 1996 WL 374186 *8 (stating that justification for a lack of treatment includes an inability to afford medical care).
>
> Whether this treatment was attainable, financially or practically under the

> circumstances when Ms. Piela was relocating during the relevant period, were considerations that the ALJ was obligated to take into consideration. However, it appears that the ALJ instead simply took every inference against Ms. Piela to make the ultimate finding of non-disability. This is glaringly apparent, for example, through the ALJ's cherrypicked findings with regard to Ms. Piela's use of a cane. The ALJ violated both SSR 96-9p and POMS HA 01280.025(B)(4). The ALJ's legal error is material because, when the ALJ asked the vocational expert to consider the impact of any required cane usage, the vocational expert testified that the only job the ALJ relied upon was not suitable (Tr. 61). As it stands, the ALJ's ultimate findings are based on nothing more than the ALJ's own unfounded supposition. Remand is, therefore, required for the ALJ to make the required findings regarding Ms. Piela's use of a cane.

First, as to the issue of not seeking treatment, an ALJ may consider a variety of factors in weighing a claimant's believability, including ordinary techniques of credibility evaluation (including testimony by the claimant that "appears less than candid"), "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," and the claimant's daily activities. Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quotations omitted); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Here, Plaintiff did not cite any evidence suggesting treatment was financially unattainable or impractical.

Second, the ALJ noted that: **1-** Plaintiff reported not using her cane so much in her home (AR 23, 25); **2-** a cane was not prescribed (AR 25); **3-** following the December 2021 ORIF surgery examinations were normal and she required no further treatment despite complaints of pain and limited range of motion (Exhibits 1F, 3F, 5F, 6F, 8F); **4-**. On August 8, 2022, the claimant continued to report "joint pain and fatigue," she was referred to orthopedics and physical therapy, but there is no evidence of any orthopedic or physical therapy treatment in the record. (Exhibit 1F/9–10); **5-**. In September 2022 and November 2022 she reported sharp left ankle pain with ambulation, exhibited swelling, decrease ROM, tenderness on exam (Exhibit 3F/26–27) and she presented with a cane (Exhibits 5F/7, 6F/37); and **6-** however, the neurological examination was intact, and xrays of the left ankle and foot showed a well healed fracture, and she was

recommended weight bearing as tolerated on the left lower extremity. AR 24; Exhibits 5F/8, 23; 6F/38.

The ALJ further noted:

> The claimant testified she was four and a half months in a wheelchair after her ankle accident, and she has pain all the time, but she does not take pain mediation. She last took Tylenol or Advil two months prior to the hearing. She testified she requested physical therapy in May or June 2022 and attended five or six sessions which provided some improvement. She has not gone to the emergency room for pain for her left ankle, but she went to the emergency room for her carpal tunnel and was discharged with braces. She testified picking up a cup hurts. She admitted to working with carpal tunnel until 2021 when she broke her ankle, and she has not been treating for her carpal tunnel in the past two years. She testified she continues to drive but it is uncomfortable. When driving, her feet fall asleep, and she experiences excruciating pain in her toes and has to pull over and remove her shoes. She went to a podiatrist who prescribed orthotics. She testified she has not had any treatment for her neuropathy in the last couple years. She testified she is able to be on her feet 45 minutes before having to sit down for about 15 minutes. She could work a whole day like this, but it would get tiresome. Particularly, her legs would get tired. The claimant testified she goes food shopping and holds onto the shopping cart. She does not use her cane so much in her home, but she uses it outside the home to help getting up and down curbs and balancing. She is worried about people bumping into her because she loses her balance. She is able to grip the cane in the right hand. She prepares her meals and does chores for 30 to 45 minutes before having to sit down. She testified that with regards to her pain, she has good days and bad days. On an average day, she rests for an hour a day. (Hearing Testimony).
>
> AR 19–20.

Notably, the Plaintiff was not prescribed an assistive device. Following her left ankle ORIF she presented with pain, swelling, and limited ROM at times, though exams were otherwise normal and x-rays showed a well healed fracture. She attended minimal physical therapy despite that it was helpful, did not take pain medication, and sought no treatment from November 2022 to February 2024. The evidence supporting cane use was limited to her testimony that she doesn't use it so much around the home, does so when she goes out to maintain balance, presented at an appointment with the cane, uses a wheelchair when it's a bad day, and had suffered falls in the past (AR 42-43, 53, 314).

Here, Plaintiff focuses on the lack of a formal finding by the ALJ as to the medical necessity of cane use and the ALJ's mistaken description of the November 10, 2022 visit where the ALJ wrote in his decision, "with no mention of assistive devices." AR 24. But as seen above, the ALJ did extensively address Plaintiff's cane use. And, as to the omission of a formal finding of medical necessity, or lack thereof, there is no controlling authority requiring the ALJ to make a formal finding on that issue. The ALJ's clear implication was that it was not medically necessary. Further, its omission from the RFC is supported by the substantial evidence as described above. And finally, the ALJ's rejection of Plaintiff's testimony that she needed the cane outside her home is supported by clear and convincing reasoning.

## VII. Findings and Recommendation

For the reasons stated above, substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Remand is warranted for the ALJ to apply the psychiatric review technique and proceed through the sequential process as appropriate. Remand is also warranted for the ALJ to further consider the functional limitations of Plaintiff's carpal tunnel syndrome and incorporate them into the RFC if appropriate.

Accordingly, the recommendation is that:

1. Plaintiff's Motion for Summary Judgment, ECF No .9, be **GRANTED**
2. Defendant's Cross Motion, ECF No. 15, be **DENIED**
3. That this action be **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with these Findings and Recommendations.
4. That the Clerk of Court be directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

## VIII. Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 25, 2026** **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE